IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIANNE WOOTTEN, and
GREG MERSHON, as Parents
of A.M., a minor child,

       Plaintiffs/Counter Defendants,

  vs.                               CIVIL NO.  11-777 WJ/LFG

ALBUQUERQUE PUBLIC SCHOOLS
BOARD OF EDUCATION,

       Defendant/Counter Claimant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO COMPEL

THIS MATTER came before the Court on Defendant/Counter Claimant Albuquerque Public Schools Board of Education's ("APS") Motion to Compel Plaintiffs to Answer Discovery and to Extend Expert Deadline [Doc. 27].[1] The Court considered the motion, Plaintiffs[2] Marianne Wootten and Greg Mershon's ("Plaintiffs or "Parents" or "Wootten") Response in Partial Opposition [Doc. 34], and the Reply of APS [Doc. 35].  Additionally, the Court reviewed the NMPED Special Education Bureau Administrative Record in  Case No. DPH 1011-33.  Oral argument is not necessary.

### Present Litigation

Plaintiffs seek an award of attorney fees and costs incurred during an administrative due process action to enforce a minor student's rights to a free and appropriate public education in

---

[1] At a recent Rule 16 status conference [Doc. 31], the Court granted the time within which APS could serve its expert report.  The exact date, however, depended on the outcome of this motion.

[2] Marianne Wootten and Greg Mershon are the parents of the minor child A.M.  They are divorced.

accordance with the Disabilities Education Act ("IDEA"), along with an award of fees and costs related to filing this procedure. [Doc. 1.]  APS opposes the request for fees and filed a separate appeal and counterclaim challenging four determinations made by the hearing officer:

- the requirement that APS obtain the consent of student's private physician regarding the location for delivery of special education services, Counterclaim at ¶¶ 23-24;

- the directive to APS to provide mental health treatment (cognitive behavioral therapy) to A.M., Counterclaim at ¶¶ 17-21;

- the directive that APS not assign certain school personnel to serve A.M., Counterclaim at ¶ 22; and

- the decision denying APS medical and mental health releases. Counterclaim at ¶ 12-16.

[Doc. 27, at 3].

The underlying administrative procedure commenced after Plaintiffs (A.M.'s parents) filed a request for a due process hearing against APS. [Record of Due Process Proceedings ("DP Record," at Tab 1].  The request for a due process hearing focuses on Plaintiffs' claims that A.M. suffers from diagnosable mental or emotional conditions, *i.e.*, anxiety disorder [id., p. 2, ¶ 10], and that as a result of this disorder, he was treated at UNM Children's Psychiatric Hospital [id., p. 3, ¶ 13].  Indeed, Plaintiffs reported:

> This problem has been going on since [A.M.] began kindergarten, [sic] I have asked for help repeatedly. I have talked to the health and wellness team at Chamisa [Elementary] every year. I have followed all of their steps, they have not worked. I have taken [A.M.] to counseling and to the psychiatrist. He has a diagnosed anxiety disorder which has now gotten out of control. Yet not at any point in this whole process did anyone ever send him to be assessed for a behavior disorder by the school system. I am informed that he is successful in school so he is not eligible for special education services.

[Id., pp. 3-4, ¶ 16].

The parents advised that in October 2010, they obtained a psychological consultation that indicated the possibility of "autism spectrum disorder" which required a further assessment. [Id., p. 4, ¶ 18]. The parents further contended that APS failed, *inter alia*, to evaluate A.M. in all suspected areas of disability, [id., p. 7, ¶ 34A]; and as a result of the failure to evaluate, APS "failed to provide adequate special education including necessary related services[,]" [id., p. 7, ¶ 34C]; failed to provided "specialized instruction, assistive technology, modifications, accommodations, and supports as needed to address A.M.'s school resistence[,]" [id., p. 8, ¶ 34D]; failed to provide staff with an understanding and expertise in autism[,] [id., p. 8, ¶ 35B]; and failed to address A.M.'s "unique needs as a result of his disability." [Id., p. 9, ¶ 35D].[3] The parents also contended that by March 2010, the school district had knowledge that A.M. –

> (a) had school anxiety and school refusal since kindergarten; (b) had been diagnosed with anxiety disorder; (c) had difficulty with peer relationships; (d) had difficulty with pragmatic language; (e) was in counseling and on medication to address anxiety; [and] (f) had been the victim of peer bullying during the 2009-2010 school year.

[Id., p. 2, ¶ 10].

As part of the parents' request for resolution, they sought a qualified third-party evaluation "in all areas of suspected disability including eligibility as a student with 'autism'." [Id., p. 10, ¶ 1].

To prepare for the due process hearing, APS sought access to and review of A.M.'s medical, psychological and physical records, including records of medication, as all of these issues were directly raised by Plaintiffs' request for a due process hearing. [Id., Tab 6.]

---

[3]The parents' claims were substantially broader than those listed here. The Court identified various claims which touch on A.M.'s physical, mental and emotional issues.

3

Plaintiffs opposed APS's request for a release of the child's medical and mental health records [id., Tab 8], and on May 12, 2011, Barbara Albin, the due process hearing officer, entered an order denying APS's request to compel production of information. [Id., Tab 10]. The order denying the motion to compel contains no analysis, citations of authority, or indication as to why the hearing officer denied the request. The order simply states, "the motion is not well taken and will be denied." [Id.].

As a result, APS could not independently obtain information and records relevant to A.M.'s mental or physical condition, even though these issues were to be presented at the due process hearing.

## Due Process Hearing

A review of the hearing officer's final decision indicates that much testimony was presented concerning A.M.'s mental, emotional, and physical condition. Indeed, the parents presented the expert testimony of the child's own psychiatrist in support of their claim. The hearing officer found that, since November 3, 2010, A.M. had under the care of a psychiatrist who appeared at the due process hearing and testified as to the child's generalized anxiety and panic disorder with agoraphobia that render the child "almost completely homebound, barely able to leave home for medical/therapy appointments." [Id., Tab 22, at 5 (*citing* Ex. KK, pp. 25-26; Ex. 10, p. 41)].

The hearing officer noted that the psychiatrist described the student's disorder as "very severe or extreme anxiety" and that the child was being managed with "multiple anti anxiety medications." [Id. (*citing* Ex. HH, p. 4; Transcript ("tr") 471-475, 491)]. The hearing officer also noted that A.M. was previously treated by a psychiatrist who prescribed anti-depressants, [id., (*citing* tr. 474)], and received counseling from privately engaged therapy since the first grade. [Id., (*citing* WW, p. 2)]. The hearing officer noted, "The primary and most relevant component or symptom of

4

student's anxiety is what has been euphemistically referred to as school refusal." [Id., p. 5]; and that the child's "behavior starts at home with Student's uncontrollable crying and screaming at the suggestion to leave for school, and continues with flailing arms and legs and grabbing fixed objects to resist being carried or forcibly removed from the house."  [Id., (*citing* Ex. 24; Ex. MM, p. 4; Ex. LL, p. 9; tr. 841-842, 1070-1072)].

At times, the parents are unsuccessful in physically forcing A.M. to go to school, and as a result of A.M.'s resistance and typical childhood illnesses, he misses 40-50 days of schooling per year. [Id., (*citing* Ex. XX, p. 14; Ex. YY, p. 4; Ex. UU].  In other instances, they are able to put him in the car, but he refuses to leave the car by grabbing onto and holding the frame to resist entering the classroom.  [Id., p. 6 (*citing* tr.1407-1408)].

The hearing officer noted that there were also persistent and somatic complaints of stomach aches, nausea, crying, inappropriate attachment to the mother, and frequent retreats from the classroom to go to the restroom, the nurse, principal or counselor. [Id., (*citing* tr. 1404-1406; Ex. QQ; tr. 849-850, 1390)].

The hearing officer's discussion and findings are peppered with references to A.M.'s disability, psychological evaluations, need for cognitive behavioral therapy, performance on various clinical and psychological testing, and clinical diagnoses. [Id., Tab 22, at 18-30.] For example, the hearing officer stated that A.M.'s psychological disorder was "patently manifested in the school setting since kindergarten," constituted a "disabling anxiety," and that the school's response was not timely or adequate to meet A.M.'s needs. [Id., at 18].  The hearing officer found that the district was required to ensure that the Student was assessed "in all areas of suspected disability," id., at 21], further noting that the school "ignores that the diagnosis of Autism may be critical to inform the

content of the IEP necessary to achieve Student's stability in school," [id..] and that the child's own psychologist refuted APS's claims and arguments in this case. [Id.; tr. 375-377].

As part of the district's obligations, the hearing officer determined:

> District is further obligated to provide Student with the related services required to assist a child with a disability to benefit from special education.  In this case, there are two pertinent related services that the District omitted from Student's IEP:  1) Psychological services, including psychological counseling for children and parents; (34 C.F.R. § 300.34(c)(10))[;] 2) Speech-language pathology services which include "Provision of speech and language services for the habilitation or prevention of communicative impairments." [(]34 C.F.R. § 300.34(c)(15)).

[Id., at 22.] The hearing officer noted that the student's IEP "made no provision for psychological services whatsoever." [Id., at 23.]

In addition, she stated:

> CBT is a psychological treatment that is focused on identifying the thinking patterns and behavior patterns that maintain a disorder and address them through intervention.  The focus is to alter the dysfunctional thinking styles and build new strategies for managing behavior to stop the avoidance behaviors.

[Id., at 23-24 (*citing* tr. 347)].

The hearing officer noted that the child's psychologist testified how the diagnosis of autism can require certain adjustments and the CBT strategy was recommended to deal with the child's problems. [Id., at 23, 24.]  Ultimately, the hearing officer concluded that the school failed to meet its obligations to the child in the fifth grade; failed to timely evaluate the student in all areas of suspected disability; and failed to develop and implement an IEP reasonably calculated to confer educational benefit. [Id., at 25].  Based on a determination that APS was in violation of its obligations to the child, the hearing officer granted wide relief, and her order is now under appeal. [*See id.*, at 30-31.]

### APS's Present Motion

APS seeks to compel Wootten to respond to its first set of discovery, Interrogatory Nos. 2 and 4, as well as Request for Production Nos. 1, 2, and 3. These interrogatories seek information regarding A.M.'s medical, mental and emotional condition and treatment. Plaintiffs object to the discovery and decline to produce the information sought, but do not object to APS's request for an extension of time to identify an expert.

### Discussion

Similar to proceedings before the administrative hearing officer, Plaintiffs again challenge APS's request for execution of medical release forms and production of medical records and information relevant to A.M.'s physical, mental and emotional condition. The parents argue that this lawsuit only concerns a request for attorney fees. That argument misses the mark. An equally important aspect of this litigation is the appeal of the hearing officer's determination. So, therefore, the issue of the child's alleged disability, including his medical, physical and emotional needs, along with APS's response thereto is very much a part of this litigation.

Fed. R. Civ. P. 26(b)(1) provides that party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . ." In this case, Plaintiffs specifically claim the child is disabled, and as a result of his special physical, mental and emotional needs, APS was required to provide a free and appropriate public education. As indicated above, Plaintiffs challenge APS's response to their child's needs. They contend that APS failed to evaluate their child's disabilities and to consider and act on his special needs and need for outside intervention, evaluations, medical treatment and resources.

Plaintiffs' complaint about the APS response and their arguments and evidence focus on their child's condition. Thus, it is clear that the questions presented to the hearing officer directly

and squarely place A.M.'s physical, psychological and emotional condition at issue. Indeed, that was the central inquiry of the entire administrative proceeding. Accordingly, the Court determines that the information sought by APS falls within the purview of Rule 26(b)(1) and is discoverable unless it is privileged.

Plaintiffs argue that these are private medical records, and, therefore, not subject to discovery. Their argument would have merit but for the fact that they have specifically placed the child's medical, physical and emotional condition at issue, and in doing so, have waived both privilege and privacy interests. *See, e.g.,* Fox v. Gates Corp., 179 F.R.D. 303, 305 (D. Colo. 1998) (a plaintiff who seeks emotional distress damages and places her medical condition at issue in waives an available privilege in litigation); Weatherspoon v. Provincetowne Master Owners Ass'n, Inc., 2010 WL 936109, *3 (D. Colo. Mar. 15, 2010) (unpublished) (by initiating a lawsuit and making a claim for emotional damages, a plaintiff waived any applicable privacy rights) (internal citation omitted); Butler v. Burroughs Wellcome, Inc., 920 F.Supp. 90, 92 (E.D.N.C. 1996) ("Elements of a claim under the ADA touch upon the most private and intimate details of a plaintiff's life. ADA plaintiffs, like plaintiffs in an action for medical malpractice, waive all privileges and privacy interests related to their claim by virtue of filing the complaint."). Moreover, a party may not make a claim for relief and deny the opposing party the very information necessary to evaluate the case for settlement or, alternatively, to be able to meet the proofs at the time of trial. *See* Smith v. Ford Motor Co., 626 F.2d 784, 798 (10th Cir. 1980) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."), *cert. denied*, 450 U.S. 918 (1981).

The Court finds that the case of Fox is instructive, notwithstanding the fact that it concerned a party's request for a Rule 35 IME. Fox, 179 F.R.D. 303. In Fox, the district court observed certain

criteria to consider in determining whether to compel an invasive independent psychological evaluation. The first inquiry is whether the plaintiff made a claim for a diagnosable mental illness or disorder. In this case, Plaintiffs contend that their child has a diagnosable illness; their experts identified school anxiety, anxiety disorder and even autism as actual or potential diagnoses. Thus, it is clear that the evidence in this case would satisfy the first of the five Fox elements.

Secondly, the Court considers whether the claimed diagnosis is "serious." Here, Plaintiffs presented evidence that the child's condition was so severe and "out of control" that it required admission to a psychiatric hospital. Indeed, the evidence outlined by the hearing officer creates a disturbing factual scenario with parents having to contend with a child who categorically refused to go to school, engaged in yelling, screaming, arm flailing, holding onto car door jams to prevent going in, and, once inside school, from time-to-time, engaged in the same conduct. The conduct was so severe that often Wootten was forced to give up her insistence that the child go to school, and this, along with illnesses, resulted in A.M. missing between 50 and 60 days of school a year. Clearly, the condition is alleged is sufficiently severe to satisfy the Fox requirements.

The third inquiry is whether Plaintiffs seek to introduce expert medical testimony. Again, that condition is satisfied, as Plaintiffs presented testimony from their own medical and psychological experts at the administrative level.

Fourth, the Court must determine whether the relief requested is significant. In this case, the very basis of the appeal is that the hearing officer ordered relief that is allegedly far beyond that authorized by the statute, and includes providing separate medical care and treatment to the child, as opposed to assessment of disability and the development of an appropriate and free public education.

If the evidence and testimony in this case meet the criteria to allow for an intrusive and independent Rule 35 evaluation, that evidence and testimony are easily sufficient for the Court to determine that the medical records and medical information, along with requests for executed releases sought by APS, are discoverable under Rule 26.

Plaintiffs also argue that "[n]owhere in IDEA, 20 U.S.C. § 1400 *et seq.*, or its implementing regulations, 34 C.F.R. 300.1 *et seq.*, and 6.31.2.1 NMAC *et seq.*, is there a single provision establishing a local school district's entitlement to medical/mental health records of its students with disabilities." [Doc. 34, at 3]. In addition, Plaintiffs contend that the federal statute is silent on a respondent's ability to engage in this kind of discovery. These arguments, again, miss the mark. This is a civil case pending in a United States District Court, and the Court's own Rules of Procedure outline rights and responsibilities in reference to the processing of civil litigation, including discovery. Indeed, much of the information sought by APS is subject to the mandatory, automatic disclosure obligations under the rules. To the extent Plaintiffs intend to present evidence that A.M. is disabled and has diagnosable medical needs, present expert testimony, or rely on documents verifying the child's condition, that information is subject to the automatic disclosure obligations under Rule 26. Even if not subject to automatic disclosures, the information sought is discoverable under Rule 26(b).

In other words, to defend the counterclaim, Plaintiffs were obligated to identify the documents they would rely on, and the witnesses on whose testimony they would rely in support of their defenses. To the extent the Court allows supplementation of the record, it would be incumbent on Plaintiffs to identify medical experts, medical witnesses and medical records to sustain their contentions that A.M. is disabled, has special medical needs, is entitled to certain evaluations to

determine disability, and should be provided appropriate responses to the child's education needs. The information sought is the exact kind of information that should have been provided.

Plaintiffs' argument that the federal statute that authorizes the cause of action does not specifically mention the right to discovery mixes apples and oranges. A statute provides for federally protected substantive rights. The means and manner of enforcing those rights in court are procedural in nature, and those procedures are outlined by the Federal Rules of Civil Procedure. Indeed, other federal statutes that provide rights, *see, e.g.*, Title VII of the Civil Rights Act of 1964, or 42 U.S.C. § 1983, vest individuals with a body of substantive protections. Neither statute speaks to the discoverability of evidence, because discovery is governed by the Court's procedural rules. Thus, the Court rejects Plaintiffs' contention that discovery is not available unless the substantive statute or code of federal regulations expressly authorizes discovery.

Plaintiffs argue that discovery of medication is also inappropriate because IDEA specifically precludes consideration of a child's medications in deciding whether to grant or deny free and appropriate public education. However, it was Plaintiffs through their own evidence that introduced the issue of medication in these proceedings. Their experts testified as to the use of anti-depressants and other medication in an effort to deal with A.M.'s conditions. Again, Plaintiffs have injected the medication issue into these proceedings and cannot now complaint that APS seeks information about the child's medication history.

## **Conclusion**

The information sought by APS appears reasonably calculated to lead to the discovery of relevant, admissible evidence. It falls within the scope of Rule 26 and no privilege precludes its discoverability because Plaintiffs have placed the child's physical, mental and emotional condition squarely at issue.

11

The Court overrules Plaintiffs' objections and directs compliance with APS's requests. Accordingly, Plaintiffs must fully answer the interrogatories, produce the records sought, and execute the request for physical/ psychological releases and return them to APS within ten days after entry of this Order.

By virtue of this ruling, the Court extends APS' expert disclosure deadline to March 19, 2012.[4]

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

---

[4] This is 30 days past the ten-day production deadline.